UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                          )
                                )
Rachel Andrews Vogler,          )     Case No. 09-11489
                                )
          Debtor.               )
                                )

<u>OPINION AND ORDER</u>

This case came before the court on November 10, 2009, for hearing on a motion for relief from the automatic stay filed on behalf of JPMorgan Chase Bank, NA ("Movant"). Kimberly A. Sheek appeared on behalf of the Movant. Charles M. Ivey, III appeared on behalf of the Chapter 7 Trustee. The issue in this case is whether the Movant has standing to seek enforcement of the note and deed of trust which, in turn, depends upon whether the Movant has made a sufficient showing of a transfer of the note and deed of trust to the Movant. The court finds the Movant has made a sufficient showing, and therefore will grant the motion.

I.   JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G), which this court has the jurisdiction to hear and determine.

## II. FACTS

On August 10, 2009, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.  The Debtor listed ownership in real property located at 3011 Truitt Drive, Burlington, North Carolina.  The Debtor listed the Movant as holding a secured claim on that property.  The Debtor's schedules also listed Carolina Bank as holding a second mortgage.  According to the schedules, the Debtor has no equity in the property because the amounts shown as due under the two deeds of trust exceed the value of the property.

On October 13, 2009, the Movant filed a motion for relief from the automatic stay.  Attached to the motion is a copy of a note and deed of trust from the Debtor dated November 25, 2003.  The deed of trust contains a description of the Truitt Drive property and reflects a recordation date of December 1, 2003.  The motion states that the note and deed of trust have been transferred and assigned to the Movant, but contains no evidence of assignment other than an entry on the note.  The note is payable to 1st State Bank and contains an undated indorsement that states "Pay to the order of Washington Mutual Bank, FA without recourse" and includes an illegible signature by a person that signed as a "Vice President" of "1st State Bank."

On October 29, 2009, the Chapter 7 Trustee filed an objection, asserting that "there is not sufficient documentation attached evidencing the assignment of the Note and Deed of Trust to JPMorgan

Chase Bank, National Association, and the Motion to Modify Stay should be denied" and requesting that a hearing be scheduled "to allow the Movant to establish proper standing to bring the Motion."

On November 2, 2009, the Movant filed an amended motion with an attached affidavit from the Federal Deposit Insurance Corporation. The affidavit states that the Federal Deposit Insurance Corporation became receiver of Washington Mutual Bank when Washington Mutual was closed by the Office of Thrift Supervision in September of 2008, and that the Movant thereafter purchased all of the loans of Washington Mutual and is the owner of such loans.

At the hearing, the only issue pursued by the Trustee was whether the undated and illegible signature on the promissory note was sufficient to constitute a valid indorsement on behalf of 1st State Bank.

### III. DISCUSSION

A.    The signature is presumed to be authentic and authorized under North Carolina Law.

It is clear from the entry on the promissory note that the signature was placed on the note in a representative capacity and not in the individual capacity of the signer. The name immediately above the signature line is "1st State Bank" and the words "Vice President" appear immediately below the signature line. The question raised by the Trustee is whether anything further is required in order for the court to accept the signature as being

authentic and authorized by 1st State Bank such that the entry on the note may be regarded as an indorsement of the note by 1st State Bank.   The answer is that nothing more is required at this juncture.

The answer to the Trustee's concern regarding the authenticity of the signature and whether it was authorized on behalf of 1st State Bank is found in N.C. Gen. Stat. § 25-3-308(a), which provides as follows:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, <u>but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.</u> If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under G.S. 25-3-402(a).

(Emphasis supplied).

The effect of the presumption provided for in N.C. Gen. Stat. § 25-3-308(a) is explained in the Official Comment to that section:

> "Presumed" is defined in Section 1-201 and means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is

- 4 -

> valid. . . . The defendant is therefore
> required to introduce evidence. The
> defendant's evidence need not be sufficient to
> require a directed verdict, but it must be
> enough to support the denial by permitting a
> finding in the defendant's favor.

While the Trustee's response to the Motion may constitute an objection as to the authenticity or authority for the signature, the Movant has the benefit of the presumption contained in section 25-3-308(a) which, in the absence of opposing evidence sufficient to support a finding that authenticity or authority is lacking, entitles the Movant to prevail on those issues. No such evidence has been offered.

A signature alone can constitute a valid indorsement under North Carolina law. N.C. Gen. Stat. § 25-3-204(a) provides that "'[i]ndorsement' means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument . . . but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement." The official comment to section 3-204 of the Uniform Commercial Code states that "[t]he general rule is that a signature is an indorsement if the instrument does not indicate an unambiguous intent of the signer not to sign as an indorser." U.C.C. § 3-204

cmt. 1.

In the present case, the signature on behalf of 1st State Bank is preceded by the words "Pay to the order of Washington Mutual Bank, FA without recourse." These words, together with the signature, clearly reflect that the intent of the signer was to negotiate the promissory note to Washington Mutual Bank, FA. As such, the signature constitutes an endorsement which, together with delivery of possession, was sufficient to transfer the promissory note and vest ownership of the note in Washington Mutual Bank, FA.

      B.    The Movant has a colorable claim to the promissory note and deed of trust and hence standing to seek stay relief.

Section 362(d) of the Bankruptcy Code sets forth the procedure and criteria for the lifting or modification of the automatic stay. Under this provision, the court may grant relief from the automatic stay by terminating, annulling, modifying or conditioning the stay "for cause." Deciding whether cause exists for the modification of the stay is a matter within the discretion of the bankruptcy court. See In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992).

Relief from stay hearings are "meant to be summary in character," and "counterclaims such as fraud are not precluded later if not raised at this stage." Estate Const. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 219 (4th Cir. 1994); See also In re Asheboro Precision Plastics, Inc., 2005 WL 1287743, at * 5 (Bankr. M.D.N.C. 2005).

- 6 -

Given the limited grounds for seeking relief from the stay and the preliminary, summary nature of the proceedings, relief from stay proceedings only require a determination of whether a creditor has a colorable claim to the estate property at issue. See Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 32 (1st Cir. 1994) (likening a hearing on a motion for relief from stay to a preliminary injunction hearing and finding that "a court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate"); In re Vitreous Steel Prods. Co., 911 F.2d 1223, 1234 (7th Cir. 1990) ("Questions of the validity of liens are not generally at issue in a § 362 hearing, but only whether there is a colorable claim of a lien on property of the estate.") (emphasis in original).

Under section 25-3-301, the holder of an instrument is entitled to enforce it. N.C. Gen. Stat. § 25-3-301. "Holder" means "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." N.C. Gen. Stat. § 25-1-201(b). The motion for relief from stay and the attached documents reflect that the note was indorsed by 1st State Bank and transferred to Washington Mutual and that on September 25, 2008, the Movant became the owner of Washington Mutual's loans and loan commitments through an assignment of all of Washington Mutual's loans. It thus appears

that the Movant is the holder of the note and therefore entitled to enforce the note. Under North Carolina law, when a promissory note secured by a deed of trust is transferred, the new owner of the note automatically becomes entitled to the security interests provided under the deed of trust without the necessity of a separate assignment being executed or recorded. See James A. Webster, Jr., Webster's Real Estate Law in North Carolina, § 13-23 (4th ed. 1994). It follows, therefore, that the Movant has a colorable claim to the promissory note and standing to seek enforcement of the note and the deed of trust securing the note.

IV.   CONCLUSION

It is undisputed that the monthly payments required under the promissory note are not being made and that the note is several months in default. There is no equity in the property and neither Debtor nor the Trustee propose to make any further payments to the Movant. These circumstances constitute cause to modify the automatic stay so as to allow the Movant to exercise its rights under the deed of trust. There being cause to modify the automatic stay under section 362(d) of the Bankruptcy Code and the Movant having shown a colorable claim to the promissory note and deed of trust, it is ORDERED, ADJUDGED AND DECREED as follows:

(1)   The Trustee's objection is overruled;

(2)   The automatic stay is hereby modified to the extent of permitting the Movant to enforce its security interest in the real

- 8 -

property of the Debtor; and

(3) Rule 4001(a)(3) is modified to allow the Movant to immediately enforce and implement this order granting relief from the automatic stay.

This 25th day of November, 2009.

WILLIAM L. STOCKS
United States Bankruptcy Judge